UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  <u>25-60011-CR-WPD</u>

UNITED STATES OF AMERICA

vs.

STEPHEN GEORGE,

Defendant.

_____/

## FACTUAL PROFFER

1.   The Defendant, STEPHEN GEORGE (the "Defendant"), his counsel, and the United States agree that, had this case proceeded to trial, the United States would have proven the following facts, among others, beyond a reasonable doubt:

2.   From November 27, 2017, until April 7, 2023, the Defendant was a member of the Finance Department at Company A. From November 27, 2017, until at least August 2022, the Defendant worked as a Vice President and Controller.

3.   Company A is a consumer-packaged goods company and the maker of a fitness drink that is headquartered in Boca Raton, Florida. Company A's shares are securities that are publicly traded on a national securities exchange, namely, the NASDAQ Stock Market.

4.   As an employee at Company A, the Defendant was subject to Company A's Insider Trading Policy that, among other things, prohibited Company A employees from trading in Company A's securities if an employee had material non-public information ("MNPI") regarding Company A. When the Defendant joined Company A, he signed a certification stating, among other things, that he had read and received the Insider Trading Policy.

-1-

5.     In addition to the Insider Trading Policy, Company A also had a Code of Ethical

Conduct that specifically prohibited insider trading:

> Employees who have access to confidential information are not permitted to use or
> share that information for stock trading purposes or for any other purpose, except the
> conduct of the Company's business. All non-public information about the Company
> should be considered confidential information. To use non-public information for
> personal financial benefit or to "tip" others who might make an investment decision
> on the basis of this information is not only unethical, but also illegal. If a question
> arises, the employee should consult the Company's Chief Financial Officer.

The Code of Ethical Conduct also stated that any violation of the code will have serious consequences

and may subject an individual employee to criminal sanctions.

6.     In his role at Company A, the Defendant received MNPI regarding, among other

things, Company A's profit and revenue performance, and the Defendant agreed to maintain the

MNPI in confidence. The Defendant had a duty of confidentiality to Company A to refrain from

trading in Company A's securities on the basis of MNPI that he received because of his employment

at Company A.

7.     The Defendant's last day of employment at Company A was Friday, April 7, 2023,

and on that day, the Defendant was aware that he was in possession of MNPI regarding, among other

things, Company A's financial performance during the first three months of 2023. For example, on

April 7, while using a Company A computer, the Defendant generated a report out of Company A's

enterprise resource planning system consisting of an Excel file that contained MNPI, specifically, a

consolidated income statement showing Company A's financial performance for the three months

ending March 31, 2023. The report showed that Company A's first quarter financial results had

greatly exceeded expectations. Shortly after generating the report, the Defendant emailed the Excel

file to himself. Rather than using his Company A email account, the Defendant logged into Gmail

Account 1 (a personal account which he controlled) and sent the Excel file from Gmail Account 1 to

-2-

Gmail Account 2 (a personal account which the Defendant also controlled). The Defendant later deleted the email from Gmail Account 2.

8.      On Monday, April 10, 2023 (the first trading day after the end of the Defendant's employment at Company A), and continuing through May 8, 2023, the Defendant purchased 20,000 shares of Company A at prices ranging from $85.72 and $106.45 per share in his E*TRADE brokerage account (ending in *1163) on the basis of MNPI.

9.      The Defendant also purchased a series of Company A call options on the basis of MNPI. Specifically, on April 13, 2023, in his Merrill Lynch brokerage account (ending in *9K75), the Defendant purchased 100 Company A May 19, 2023 $95 call options at $4.00 per contract and 100 Company A May 19, 2023 $105 call options at $1.75 per contract, and on April 20, 2023, in his E*TRADE brokerage account, the Defendant purchased 100 Company A May 19, 2023 $100 call options at $2.50 per contract.

10.      On May 9, 2023, after the close of the market, Company A publicly reported better-than-expected earnings and sales for the quarterly period ending March 31, 2023, including an all-time quarterly record in revenue. Company A's financial performance, as contained in the report that the Defendant generated and sent to himself on April 7, 2023, was better than expected. After the news of Company A's financial performance became public, Company A's stock price went up significantly.

11.      During the next trading day, May 10, 2023, in his E*TRADE brokerage account, the Defendant sold the $100 call option contracts at $30 per contract and all 20,000 shares at prices ranging from $130.70 and $133.03 per share, resulting in a profit of approximately $1,085,566.90. In addition, also on May 10, 2023, in his Merrill Lynch brokerage account, the Defendant sold the $95

and $105 call option contracts at $37.50 and $28.00 per contract, respectively, resulting in a profit of approximately $597,234.76.

12.    The Defendant executed these trades in Company A securities on the basis of MNPI regarding Company A.

13.    The parties agree that these facts, which do not include all facts known to the United States and the Defendant, are sufficient to prove to the sole count of the Information.

GLENN S. LEON
CHIEF, FRAUD SECTION

Date: 2/4/25                    By: _____
                                     MATTHEW F. SULLIVAN
                                     MATT KAHN
                                     TRIAL ATTORNEYS


HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

Date: 2/4/25                    By: _____
                                     ELI RUBIN
                                     ELIZABETH YOUNG
                                     ASSISTANT U.S. ATTORNEYS


Date: 2/4/2025                  By: _____
                                     MATTHEW MENCHEL, ESQ.
                                     ATTORNEY FOR DEFENDANT


Date: 2/4/25                    By: _____
                                     GABRIELA M. RUIZ, ESQ.
                                     ATTORNEY FOR DEFENDANT


Date: 2/4/25                    By: _____
                                     STEPHEN GEORGE
                                     DEFENDANT

-4-